No. 65,459

HELEN BROWN COLES, *Plaintiff*, v. DR. A. P. TALIAFERRO, *Appellant*, and NORTHSIDE DEVELOPERS, INC., *Defendant*, v. J. VIRGINIA HUBBARD, *Appellee.*

(840 P.2d 1102)

Opinion filed October 30, 1992.

*Rosie M. Quinn*, of Rosie M. Quinn & Associates, of Kansas City, argued the cause and was on the brief for appellant.

*John E. Larson*, of Evans & Mullinix, P.A., of Kansas City, argued the cause, and *Timothy J. Evans*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This first impression corporation code case requires us to determine the source of compensation, expenses, and attorney fees for the services of a corporation's provisional director-custodian.

The trial court assessed the compensation, expenses, and attorney fees of a provisional director-custodian appointed in a dual capacity under K.S.A. 17-7213 and K.S.A. 17-6516 as costs against Dr. A. P. Taliaferro, personally. Taliaferro is a defendant in the case at bar and one of two 50% shareholders in Moni-Stat, Inc.

(Moni-Stat). The Court of Appeals affirmed in an unpublished opinion filed February 14, 1992.

We granted Taliaferro's petition for review. We hold that the compensation, expenses, and attorney fees are to be paid either by the corporation or from its assets. We reverse the trial court and the Court of Appeals.

### Facts

The litigation pattern of the principals (Helen Brown Coles, the other Moni-Stat shareholder; Taliaferro; and J. Virginia Hubbard, the custodian and provisional director appointed by the court) affects the compensation issue; consequently, the factual scenario must be set out in some detail.

Taliaferro and Coles (plaintiff) formed the corporation in 1981 to purchase low-cost houses. The houses were to be either refurbished and managed as rental property or sold. Coles was to purchase, oversee the refurbishing, and manage the properties.

Taliaferro provided the financing by having Northside Developers, Inc., (Northside) loan money to Moni-Stat. Taliaferro owns 80% of Northside. Taliaferro and Coles, for Moni-Stat, signed demand notes to Northside. By 1985, the demand notes totaled $169,000, at interest rates ranging from 10% to 20%.

Coles managed Moni-Stat from 1981 to mid-1985. In mid-1985, a disagreement arose between Coles and Taliaferro. Taliaferro took over the management. Northside called the demand notes and filed suit against Moni-Stat.

In 1986, Coles sued Taliaferro and Northside alleging, in part, breach of fiduciary duty by Taliaferro as an officer/director of Moni-Stat. (The issue in the case at bar is an epilogue to the Coles lawsuit.) The trial court: (1) ruled against Taliaferro awarding Coles $20,000 and costs; (2) found the two Moni-Stat 50% shareholder-directors to be deadlocked; and (3) appointed Hubbard as a provisional director of Moni-Stat "under the terms of" K.S.A. 17-7213 and a custodian "under the terms of" K.S.A. 17-6516.

Taliaferro appealed. The Court of Appeals reversed in *Coles v. Taliaferro*, unpublished opinion No. 63,739 filed January 26, 1990 (*Taliaferro I*). The Court of Appeals reasoned that *Taliaferro I* was actually a derivative suit and that Moni-Stat, which was

not a party, was the real party in interest. The case was remanded to the trial court to vacate the judgment. The Court of Appeals found no error in appointing Hubbard as a provisional director and a custodian of Moni-Stat.

Even though Coles' $20,000 judgment against Taliaferro was vacated because Moni-Stat was not a party, we observe Moni-Stat has not been made a party to any of the proceedings which form the basis of the controversy now before us.

While *Taliaferro I* was pending, Hubbard acted as the Moni-Stat court-appointed provisional director and custodian. At a February 1989 hearing, the trial court approved Hubbard's compensation request to pay herself $750 per month from Moni-Stat assets for her first three months of service (December 1988, January and February 1989). These three payments are not questioned by Taliaferro. The trial court required Hubbard to obtain a written order from the court authorizing future compensation. In April 1989, the Moni-Stat directors, during a hearing before the trial court, voted 2-1 to file bankruptcy (Coles and Hubbard voted in favor, and Taliaferro voted against).

In May 1989, Northside sued Coles and Hubbard for actions taken as directors of Moni-Stat, alleging negligent mismanagement. The suit, which was not before the trial judge presiding over the case at bar, was ultimately dismissed by the trial court. Northside appealed the dismissal to the Court of Appeals, which affirmed. *Northside Developers, Inc. v. Coles,* No. 64,732, unpublished opinion filed January 25, 1991.

In June 1989, Hubbard moved for an order allowing her to resign as Moni-Stat's provisional director-custodian. Both parties allege in their briefs that the trial court denied the motion, reasoning it lacked jurisdiction because the case was on appeal; however, the trial court's ruling is not in the record. Hubbard filed a motion in the United States Bankruptcy Court to resign "As State Court Receiver and Custodian of Moni-Stat, Inc." The motion was granted in July 1989. *In re Moni-Stat, Inc., Debtor,* No. 89-20563-11.

In September 1989, Hubbard filed a motion in the case at bar for approval of her final accounting, costs, and attorney fees. Hubbard requested $750 compensation for the months of July and August 1989, $250 in expenses for her appearance in the

bankruptcy court, and $3,000 for attorney fees incurred as a director and custodian of Moni-Stat. The trial court declined to rule on Hubbard's motion while *Taliaferro I* was pending.

In February 1990, after *Taliaferro I* vacated the $20,000 judgment against Taliaferro, Hubbard refiled her motion for approval of the final accounting, expenses, and attorney fees. (The attorney fees were increased to $3,600.)

Hubbard informed the trial court that the $3,600 in attorney fees was for two months' representation to prepare and file her final accounts and for the defense of *Northside Developers, Inc. v. Coles*.

Taliaferro objected to the allowance of Hubbard's compensation, expenses, and her attorney fees. He argued that Hubbard was being paid out of Moni-Stat's assets and because Moni-Stat was in bankruptcy, the trial court lacked jurisdiction to make any orders against Moni-Stat. Taliaferro told the trial court that Hubbard had filed a claim for her services, expenses, and fees in the Moni-Stat bankruptcy, which he asserts is the proper procedure. Taliaferro stated he planned to file an objection in the bankruptcy court.

Coles argued that the request for Hubbard's fees should be filed and submitted to the bankruptcy court for payment from the assets of Moni-Stat.

Hubbard then stated that if she is not paid by Moni-Stat, she would ask to be paid by Northside. At this point, Taliaferro argued Hubbard had not earned the fees she claimed and that the attorney fees were improper. Coles stated that if she might be liable for the fees she also contested Hubbard's work during July and August 1989. Coles' counsel thought the court ruled at the time of Hubbard's appointment, that Hubbard was to be compensated out of Moni-Stat assets. Coles felt that Taliaferro or Northside should pay the majority of the attorney fees.

The trial court approved the accounting, Hubbard's compensation, her expenses for the bankruptcy court appearance, and her attorney fees in the case at bar, but not her attorney fees in *Northside Developers, Inc. v. Coles*. The trial court stated that Hubbard's compensation, expenses, and attorney fees are treated as costs, and assessed them against Taliaferro and Northside, the defendants in the case at bar.

Taliaferro filed a motion to reconsider. He argued that Hubbard's claim was against Moni-Stat and, consequently, it was unfair to assess the claim personally against only one of Moni-Stat's 50% shareholders. Taliaferro also contended Hubbard did not provide services in July and August 1989. Hubbard informed the court that she incurred the fees in *Northside Developers, Inc. v. Coles,* because Northside sued her in her capacity as a Moni-Stat director. The trial court then modified its ruling and allowed all of Hubbard's attorney fees claim.

The trial court denied Taliaferro's motion to reconsider, reasoning that Hubbard was appointed Moni-Stat's provisional director-custodian as an officer of the court and that Hubbard had to be compensated. According to the trial court, assessing the costs against Taliaferro was within its discretion and fair.

Neither Coles nor Northside has filed a brief or participated in this appeal.

In March 1992, Hubbard filed a motion for attorney fees in the Court of Appeals. The Court of Appeals granted the motion in part.

### Compensation, Expenses, and Attorney Fees of a Provisional Director Under K.S.A. 17-7213 and a Custodian Under K.S.A. 17-6516

We acknowledge the dilemma confronting the trial court in March 1990 when it ordered Taliaferro to pay Hubbard's services, expenses, and attorney fees. Moni-Stat, apparently, had been in bankruptcy for 11 months at that time and has never been a party in the case at bar. The trial court had appointed a corporate provisional director-custodian, who had served capably. On April 14, 1989, the corporation's directors had voted 2-1 (Hubbard casting the deciding vote) to file for bankruptcy under chapter 11. The Court of Appeals, in *Taliaferro I,* had reversed a $20,000 judgment against Taliaferro because Moni-Stat was not a party to the action.

Taliaferro argues that the trial court abused its discretion in taxing Hubbard's compensation, expenses, and attorney fees (for service as a corporate provisional director-custodian) against him personally. He asserts various statutes, prior court rulings, and

actions of the Moni-Stat board of directors mandated that Hubbard's claim be paid from Moni-Stat funds.

Hubbard contends that the trial court had discretion to assess her director-custodian compensation, expenses, and attorney fees against Taliaferro. Hubbard points out that Moni-Stat was not a party to the instant lawsuit. She also contends that Taliaferro's actions, particularly causing a lawsuit to be filed against her in her capacity as a director of Moni-Stat, justify the trial court's assessment against Taliaferro.

The Court of Appeals observed:

"Coles and Taliaferro failed to agree on a procedure for paying Hubbard, and eventually the court devised a temporary plan. It is implicit in the judge's order that Hubbard's compensation was to be paid from Moni-Stat assets. Under K.S.A. 17-6908, made applicable to this case through K.S.A. 17-6516(b), the custodian (Hubbard) should be paid from the corporation's assets."

The Court of Appeals cited K.S.A. 17-7213(c) (compensation of a provisional director), K.S.A. 17-6516(b) and K.S.A 17-6908 (compensation, costs, and expenses, including attorney fees of a receiver), and K.S.A. 1991 Supp. 17-6002(b)(6) (a stockholder's limited liability for a corporate debt), and concluded that "there is no clear statutory direction regarding Hubbard's compensation." The Court of Appeals noted that the transcripts suggest Taliaferro acted inappropriately, stating:

"The district court found that Taliaferro's actions came very close to defrauding Coles. At one point, the court indicated that Taliaferro had come close to threatening Hubbard: 'THE COURT: Did you tell her that the Judge is immune but [she is] not immune? DR. TALIAFERRO: Yes, I did, I told her— THE COURT: To me, that borders on a threat, Doc.' Further, this court stated that it was Taliaferro's fault that a provisional director was appointed."

The Court of Appeals held that the trial court did not abuse its discretion in assessing Hubbard's compensation, expenses, and attorney fees against Taliaferro. Based on our analysis of the pertinent statutory directives, we do not agree that the assessment order was within the trial court's discretion.

The trial court stated in its memorandum decision awarding Coles $20,000 (reversed in *Taliaferro I*): "While all these circumstances come close to establishing fraud, I do not so find.

Defendant [Taliaferro] is a respected local doctor, who claims he has done nothing wrong. Plaintiff [Coles] claims he is feathering the nest of Northside, in which he has an 80% interest, and making worthless her 50% interest in Moni-stat, Inc."

K.S.A. 17-7213(c) governs the appointment of a provisional director and provides, in part:

"[A provisional director's] compensation shall be determined by *agreement between him and the corporation, subject to approval of the court,* which may fix his compensation in the absence of agreement or in the event of disagreement between the provisional director and the corporation." (Emphasis added.)

K.S.A. 17-6516(b) states:

"A custodian appointed under this section shall have all the powers and title of a receiver appointed under K.S.A. 17-6901, but the authority of the custodian is to continue the business of the corporation and not to liquidate its affairs and distribute its assets, except when the court shall otherwise order and except in cases arising under subsection (a)(3) of this section or subsection (a)(2) of K.S.A. 17-7212."

Chapter 17, Article 69 deals with insolvent corporations and the manner in which a receiver will conduct his or her duties. Within Article 69, K.S.A 17-6908 provides for the compensation, costs, and expenses of a receiver and states:

"The district court, before making distribution of the *assets of a corporation* among the creditors or stockholders thereof, shall allow and *pay out of the assets:* (1) *A reasonable compensation to the receiver or trustee for his services;* (2) *the cost and expenses incurred in and about the execution of his trust, including reasonable attorneys' fees;* and (3) *the costs of the proceedings in the court."* (Emphasis added.)

The Court of Appeals stated:

"Finally, under K.S.A. 1991 Supp. 17-6002(b)(6), a stockholder, unless otherwise prescribed by the articles of incorporation, is not personally liable for the payment of the corporation's debt 'except as they may be liable by reason of their own conduct.' The court's order leads us to conclude that it found Taliaferro to be liable for Hubbard's costs due to his conduct.

"There is a suggestion from the transcripts that Taliaferro acted inappropriately."

Taliaferro argues that the inappropriate behavior referred to by the Court of Appeals is not the type of conduct contemplated by K.S.A. 1991 Supp. 17-6002(b)(6). Taliaferro is correct. He is not the sole Moni-Stat shareholder. A corporation and its stockholders

are presumed separate and distinct. Generally, debts of a corporation are not the individual indebtedness of its stockholders. *Amoco Chemicals Corporation v. Bach,* 222 Kan. 589, 593, 567 P.2d 1337 (1977).

The Court of Appeals concluded that there was no clear statutory direction regarding Hubbard's compensation. We analyze the corporation provisional director-custodian compensation relationship as follows: First, K.S.A. 17-7213(c) presumes a provisional director will be paid by the corporation. K.S.A. 17-6516(b) states that a custodian shall have all the powers and title of a receiver. K.S.A. 17-6908, made applicable to the case at bar through K.S.A. 17-6516(b), provides that a receiver's compensation, costs, and expenses, including attorney fees, shall be paid out of the corporation's assets. The three statutes indicate that a K.S.A. 17-7213(c) provisional director who also acts in a dual capacity as a K.S.A. 17-6516(b) custodian is to be paid either by the corporation or from its assets. We note that the trial court's initial compensation order of February 1989 authorized payment to Hubbard of $750 per month for the first three months for her services. She was paid from Moni-Stat assets and not personally from Taliaferro or Coles, the two Moni-Stat shareholders.

The Kansas Comment to K.S.A. 17-6516 provides in part:

"*Only a slight wording change distinguishes this section from § 226 of the Delaware code.* It provides that, upon application, the court may appoint a custodian (or receiver if the corporation is insolvent) to continue the business of the corporation whenever any of the conditions enumerated in paragraphs (1), (2) or (3) of subsection (a) are shown to exist. Essentially, these conditions involve the inability or failure of the corporation (either through its directors or stockholders) to carry out required acts or functions." (Emphasis added.)

A commentary on § 226 of the Delaware Code states that a custodian's "compensation should be approved by the court and *paid by the corporation.*" (Emphasis added.) 2 Folk on the Delaware General Corporation Law, A Commentary and Analysis § 226.5 (3d ed. 1992).

Based on the above analysis, we find the compensation awarded to a corporation provisional director-custodian is statutorily directed to be paid by the corporation. Under the facts in the case at bar, the trial court had no discretion to order otherwise.

Taliaferro, a defendant and one of two stockholder-directors of Moni-Stat, who has been sued in the case at bar by Coles, the other stockholder-director, is not personally liable for Hubbard's services, expenses, and attorney fees.

Taliaferro's contention that the amounts claimed by Hubbard were unreasonable is now moot.

Taliaferro also asserts error in the administrative judge's denial of his motion for change of judge and the denial of due process and equal protection. Our reversal disposes of Taliaferro's remaining contentions.

The Court of Appeals order of March 20, 1992, allowing Hubbard attorney fees is vacated.

Reversed.